# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**TECH AND GOODS, INC.,**

      Plaintiff/Counter-Defendant,

v.

**30 WATT HOLDINGS, LLC,**

      Defendant/Counter-Plaintiff.

Case No. 2:18-cv-13516

Dist. Judge Stephen J. Murphy III

Mag. Judge R. Steven Whalen

_____/

## 30 WATT HOLDINGS, LLC'S RESPONSE TO TECH AND GOODS, INC.'S MOTION TO DISMISS 30 WATT HOLDINGS, LLC'S COUNTERCLAIMS

# **TABLE OF CONTENTS**

Page

INDEX OF AUTHORITIES ........................................................................ ii

QUESTION PRESENTED ............................................................................v

I.     INTRODUCTION ................................................................................1

II.    STATEMENT OF FACTS ..................................................................1

III.   ARGUMENT ......................................................................................5

      A.    Standard of Review Under Fed. R. Civ. P. 12(b)(6) ............................5

      B.    Count I States a Factually and Legally Viable Claim for Unfair Competition Under Section 43 of the Lanham Act...............................5

      C.    Count II States a Factually and Legally Viable Claim for Common Law Unfair Competition .....................................................12

      D.    Count III States a Factually and Legally Viable Claim for Tortious Interference With Business Expectancy ...............................15

      E.    Count IV States a Factually and Legally Viable Claim for Violation of the Michigan Consumer Protection Act .........................21

CONCLUSION ............................................................................................25

## <u>INDEX OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adam Comm. Ctr. v. City of Troy*,
381 F. Supp. 3d 887 (E.D. Mich. 2019) ..................................................5, 19, 20

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508, 92 S. Ct. 609 (1972).......................................................................20

*Clairol, Inc. v. Boston Dis. Ctr. of Berkley, Inc.*,
608 F.2d 1114 (6th Cir.1979) ...............................................................................13

*Dassault Systemes, S.A. v. Childress*,
2014 WL 6865498 (E.D. Mich. Dec. 3, 2014) ....................................................13

*Directtv, Inc. v. Treesh*,
487 F.3d 471 (6th Cir. 2007) ................................................................................5

*Dura Global Tech., Inc. v. Magna Donnelly Corp.*,
2009 WL 3032594 (E.D. Mich. Sept. 18, 2009) .................................................14

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127, 81 S. Ct. 523 (1961).......................................................................20

*Fed.-Mogul World Wide, Inc. v. Mahle GmbH*,
2011 WL 4485080 (E.D. Mich. Sept. 27, 2011) ..........................................13, 14

*Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*,
261 F. Supp. 2d 837 (E.D. Mich. 2003) .......................................................23, 24

*Frisch's Restaurants, Inc. v Elby's Big Boy of Steubenville, Inc.*,
670 F.2d 642 (6th Cir. 1982) .................................................................................6

*Game On Ventures, Inc. v. Gen. RV Ctr., Inc.*,
587 F. Supp. 2d 831 (E.D. Mich. 2008) ..............................................................24

*GEICO Corp. v. Autoliv, Inc.*,
345 F. Supp. 3d 799 (E.D. Mich. 2018) ..............................................................21

*Gnesys v. Greene*,
437 F.3d 482 (6th Cir. 2005) ................................................................................11

*Good Housekeeping Shop v. Smitter*,
254 Mich. 592 (1931) .........................................................................14

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*,
268 Mich. App. 83 (2005) ..................................................................15

*Iowa Health System v. Trinity Health Corp.*,
177 F. Supp. 2d. 897 (N.D. Iowa 2001) ...........................................6, 7

*John Labatt Ltd. v. Molson Breweries*,
853 F. Supp. 965 (E.D. Mich. 1994) ..............................................23, 24

*Larami Corp. v. Amron*,
1995 WL 128022 (E.D. Pa. March 23, 1995)....................................8, 9

*Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*,
964 F. Supp. 90 (W.D.N.Y. 1997).........................................................9

*Lidochem, Inc. v. Stoller Enterprises, Inc.*,
2012 WL 4009709 (6th Cir. Sept. 12, 2012) .......................................6

*NCR Corp. v. Korala Assocs., Ltd.*,
512 F.3d 807 (6th Cir. 2008) ..............................................................14

*Polar Molecular Corp. v. Amway Corp.*,
2007 WL 3473112 (W.D. Mich. Nov. 14, 2007) ..........................11, 12

*Repap Enterprises, Inc. v. Kamyr, Inc.*,
1993 WL 322881 (E.D. Pa. June 8, 1993).........................................6, 8

*Scooter Store, Inc. v. SpinLife.com*,
777 F. Supp. 2d 1102 (S.D. Ohio 2011) .............................................20

*Shafi v. Weidinger*,
2011 WL 6338864 (E.D. Mich. Dec. 19, 2011) ..................................13

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................*passim*

**Statutes**

Lanham Act Section 43....................................................................*passim*

MCL 445.903(1) ......................................................................................................22

## <u>QUESTION PRESENTED</u>

I.  Should the Court deny Plaintiff/Counter-Defendant Tech and Goods, Inc.'s ("TG") Fed. R. Civ. P. 12(b)(6) motion to dismiss Defendant/Counter-Plaintiff 30 Watt Holdings, LLC's ("30 Watt") counterclaims for unfair competition under the Lanham Act, common law unfair competition, tortious interference with business expectancy, and violation of the Michigan Consumer Protection Act where 30 Watt has alleged facts which, taken as true, are sufficient to state an actionable claim as to each of these causes of action?

30 Watt answers "***yes***."

## I.    <u>INTRODUCTION</u>

Plaintiff/Counter-Defendant Tech and Goods, Inc. ("TG") made false and deceptive statements to Amazon regarding its purported trademark rights and Defendant/Counter-Plaintiff 30 Watt Holdings, LLC's ("30 Watt") purported infringement of those rights. TG made those statements so that 30 Watt's competing product would be removed from Amazon's listings, paving the way for TG to sell its product to Amazon consumers unimpeded by competition from 30 Watt. And it worked. Amazon removed TG's product based on TG's statements, causing a loss of customers, revenue, and good will to 30 Watt.

To recover for the harm it has sustained as a result of TG's actions, 30 Watt has alleged four counterclaims against TG: (1) unfair competition under the Lanham Act (Count I); (2) common law unfair competition (Count II); (3) tortious interference with business expectancy (Count III); and (4) violation of the Michigan Consumer Protection Act (Count IV). As demonstrated below, TG has alleged facts sufficient to state an actionable claim as to each of these counts. Accordingly, TG's motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be denied in its entirety.

## II.    <u>STATEMENT OF FACTS</u>

Since 2009, 30 Watt has marketed glassware, beverage containers, bottle openers, and other products throughout the United States. *See* 30 Watt's Counterclaim, ECF 20, ¶ 6. In November 2017, 30 Watt launched its "SUDSKI"

product, which is a device for holding beer cans or bottles in the shower. *Id*., ¶ 7. 30 Watt owns U.S. Registration No. 5460777 for the word mark "SUDSKI" in International Class ("IC") 21 for "bath accessories, namely, cup holders." *Id*., ¶ 8. This registration issued on the USPTO's Principal Register on May 1, 2018. *Id*.

30 Watt launched its "SIPSKI" product, which is a device for holding wine glasses in the shower, in September 2018. *Id*., ¶ 9. 30 Watt owns U.S. Registration No. 5624272 for the word mark "SIPSKI" in IC 21 for "bath accessories, namely, cup holders." *Id*., ¶ 10. The SIPSKI registration issued on the Principal Register on December 4, 2018. *Id*.

30 Watt has invested significant time, money, and effort in developing and promoting its SIPSKI and SUDSKI products, which have received recognition in national media outlets including People, Food Network, Country Living, and Good Housekeeping. *Id*., ¶ 11. 30 Watt sells these products through various retailers, including Amazon, Kohl's, and Target. *Id*., ¶ 12. 30 Watt intended for Amazon to be one of its primary sales outlets. *Id*. 30 Watt markets the SUDSKI using packaging that describes the product as a "shower beer holder," which, as noted, is the intended use of the product. *Id*., ¶ 13.

TG markets a SIPCADDY product that is a direct competitor of the SUDSKI and SIPSKI products. TG offers its SIPCADDY for sale through Amazon, among other outlets. *Id*., ¶ 14. TG owns U.S. Registration No. 4695882 for a SIPCADDY

mark, as depicted in the certificate of registration, in IC 21 for "Bath Accessories, namely, cup holders." *Id.*, ¶ 15. TG also owns U.S. Registration No. 5259338 for SHOWERBEER and U.S. Registration No. 5328120 for SHOWER BEER, both in IC 21, for "Bath accessories, namely, cup holders." *Id.*, ¶ 16.

Shortly after 30 Watt began marketing its SIPSKI product, TG embarked on a campaign to stifle competition and cause economic injury to 30 Watt by knowingly and maliciously asserting non-existent trademark rights and false claims of infringement against 30 Watt. *Id.*, ¶ 17. Specifically, on and after September 22, 2018, TG filed one or more complaints with Amazon, seeking removal of the SUDSKI from Amazon's product listings, claiming that it infringed TG's purported trademark rights in "SHOWER BEER." *Id.*, ¶ 18.

TG lacked a good faith basis for submitting these complaints, and knowingly submitted them for the purpose of unfairly stifling competition and causing economic injury to 30 Watt[1], because (a) TG did not use "SHOWER BEER" as a trademark in connection with any product that it was marketing and otherwise claimed exclusionary rights in "shower beer" that it did not have; (b) 30 Watt's use of "shower beer holder" on the packaging of its SUDSKI product was plainly

---

[1] The Counterclaim states that "TG had no good faith basis for submitting these complaints, and knowingly submitted them for the purpose of unfairly stifling competition and causing economic injury to *TG* …" Counterclaim, ¶ 19 (emphasis added). As is evident from the context, the reference to "TG" is a typographical error and was intended to be a reference to 30 Watt.

descriptive in nature and a non-trademark use of the phrase, and was thus not in violation of any right of TG; and (c) TG's "SHOWER BEER" mark was either descriptive or generic and therefore conferred no right upon TG to exclude others from using the phrase "shower beer" or "shower beer holder" in connection with the sale of a shower beer holder. *Id.*, ¶ 19.

Based on TG's complaints, Amazon removed the SUDSKI from its product listings. *Id.*, ¶ 20. Consequently, the SUDSKI was unavailable for purchase on Amazon for one year or more, resulting in reduction in consumer choice, lost SUDSKI sales, and substantial economic harm to 30 Watt. *Id.*

In September 2018, and in a further attempt to stifle competition and cause economic harm to 30 Watt and its business relationships, TG sent correspondence to 30 Watt's supplier, Tooletries Pty. Ltd. ("Tooletries"), an Australian entity, falsely claiming that the SUDSKI and SIPSKI infringed TG's trademarks. *Id.*, ¶ 21. TG demanded that Tooletries cease and desist from any further sales of the SUDSKI and the SIPSKI. *Id.* TG also named Tooletries as a defendant in this case even though TG had no colorable basis for suing Tooletries in this forum. *Id.*, ¶ 21. Tooletries was dismissed from the case by order dated August 12, 2019 [ECF 19]. *Id.*, ¶ 22.

Based on these facts, 30 Watt alleges four counterclaims: (1) unfair competition under the Lanham Act (Count I); (2) common law unfair competition

(Count II); (3) tortious interference with business expectancy (Count III); and (4) violation of the Michigan Consumer Protection Act (Count IV). *Id.*, ¶¶ 24-47.

## III.   ARGUMENT

### A.   Standard of Review Under Fed. R. Civ. P. 12(b)(6)

"When reviewing a motion to dismiss under Rule 12(b)(6), a court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Adam Comm. Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 894 (E.D. Mich. 2019) (quoting *Directtv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). A 12(b)(6) motion must be denied where the claims alleged are factually plausible and rest upon viable legal theories. *Adam*, 381 F. Supp. 3d. at 894-895.

### B.   Count I States a Factually and Legally Viable Claim for Unfair Competition Under Section 43 of the Lanham Act

Count I is a claim for unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125. This claim is based principally on TG's false and bad faith assertions to Amazon regarding its purported rights in the term "shower beer" and 30 Watt's purported infringement of those rights, resulting in the SUDSKI being de-listed from Amazon and economic harm to 30 Watt. Counterclaim, ¶¶ 24-29.

Section 43(a) of the Lanham Act states the following:

*(a) Civil action*

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name,

symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.

The Sixth Circuit, and other courts, recognize that because Section 43(a) is "remedial in nature," it "should be interpreted and applied broadly so as to effectuate its remedial purpose." *Frisch's Restaurants, Inc. v Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 651 (6th Cir. 1982); *see also Lidochem, Inc. v. Stoller Enterprises, Inc.*, 2012 WL 4009709 at *5 (6th Cir. Sept. 12, 2012) ("This remedial statute is broadly construed to provide protection against a variety of deceptive commercial practices….") For this reason, "Lanham Act 'unfair competition' claims may be based on conduct far broader than the bare language of the statute might suggest." *Iowa Health System v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 929 (N.D. Iowa 2001); *see also Repap Enterprises, Inc. v. Kamyr, Inc.*, 1993 WL 322881, at *6 (E.D. Pa. June 8, 1993) ("Section 43(a) proscribes not only acts that

would technically qualify as trademark infringement, but also unfair competitive practices involving actual or potential deception.") Consistent with the remedial purpose of Section 43(a), courts have held that the groundless or oppressive assertion of intellectual property rights can support a claim for unfair competition.

For example, in *Iowa Health System*, 177 F. Supp. 2d. 897, Trinity Iowa brought unfair competition claims against Trinity Michigan under Section 43(a) and state law based on allegations that Trinity Michigan had knowingly asserted groundless and oppressive trademark infringement claims against Trinity Iowa. *Id*. at 929. Trinity Michigan claimed that its mere assertion of trademark rights could not form the basis for an unfair competition claim. The court generally agreed, but concluded that Trinity Iowa had alleged more than just an assertion of trademark rights by Trinity Michigan:

> Nevertheless, more is alleged here than mere assertion of trademark rights by the Trinity Michigan Defendants. Instead, the Trinity Iowa Plaintiffs[] … allege[] that the Trinity Michigan Defendants have asserted that the '669 mark gives them superior rights in the "Trinity" and "Trinity Health" marks at issue here without a legitimate basis for such contentions…. The unfair competition counterclaim also alleges that the Trinity Michigan Defendants' unfounded assertion of superior trademark rights here is to deter and obstruct the Trinity Iowa Plaintiffs' legitimate business.

*Id*. at 930-931. The court concluded that Trinity Iowa's allegations were sufficient to state an actionable unfair competition claim because they went "beyond allegation merely of legitimate enforcement of trademark rights to conduct intended to create

confusion about the proper scope of the trademark rights of the parties, with the purpose of damaging the Trinity Iowa Plaintiffs' business." *Id*. at 932.

Similarly, in *Repap Enterprises*, 1993 WL 322881, a false assertion of intellectual property rights led to a finding of liability under Section 43(a) of the Lanham Act. The defendant in *Repap* obtained trade secrets from the plaintiff during business negotiations and then incorporated them in patent applications. *Id*. at *5-6. The court found that the defendant's fraudulent assertions of patentable rights in the applications constituted unfair competition under Section 43(a). The court noted that "Section 43(a) proscribes not only acts that would technically qualify as trademark infringement, but also unfair competitive practices involving actual or potential deception." *Id*. at *6. The court found that the defendant had "engaged in such practices" by making false and misleading statements in the applications about its rights in the technology when the plaintiff was the true owner of those rights. *Id*.

*Larami Corp. v. Amron*, 1995 WL 128022 (E.D. Pa. March 23, 1995) is another example of a case in which a party was held liable for unfair competition under Section 43(a) based on bad faith assertions of intellectual property rights. The plaintiff marketed a popular line of toy water guns known as the "Super Soaker". *Id*., at *1. The defendants sent letters to the plaintiff's "customers, potential customers, and other business associates which threatened various legal actions for patent and trademark infringement against anyone buying or selling … 'Super

Soaker' products, or using that trademark." *Id*. at *4. At trial, the plaintiff presented evidence that the defendants "did not have a good faith belief that their patent or trademark rights were being infringed" and that the plaintiff's customers were deceived into believing that the plaintiff had infringed the defendants' rights. *Id*. at *5, 10. The jury found the defendants liable for unfair competition, and the district court denied the defendants' post-verdict motions in their entirety. *See also, e.g., Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*, 964 F. Supp. 90, 95 (W.D.N.Y. 1997) ("There is case authority that allegations that a party falsely represented to a business's customers that the business was infringing on the party's patent rights will support [unfair competition claims.]")

Consistent with the above-cited case law, 30 Watt has set forth allegations of false and deceptive assertions of intellectual property rights by TG that are sufficient to state an actionable Section 43(a) unfair competition claim. As detailed above and in 30 Watt's Counterclaim, 30 Watt alleges that,

- TG sought to stifle competition and cause economic harm to 30 Watt by knowingly and maliciously asserting non-existent trademark rights and false claims of infringement against 30 Watt through complaints filed with Amazon, by which TG sought removal of the SUDSKI product from Amazon's product listings. Counterclaim, ¶¶ 17, 18;

- TG lacked a good faith basis for submitting these complaints, and knowingly submitted them to unfairly stifle competition and cause economic harm to 30 Watt, because (a) TG did not use "SHOWER BEER" as a trademark and otherwise claimed exclusionary rights in "shower beer" that it did not have; (b) 30 Watt's use of "shower beer holder" on the SUDSKI packaging was plainly descriptive in nature and

9

thus not in violation of any right of TG; and (c) TG's "SHOWER BEER" mark was either descriptive or generic and therefore conferred no right upon TG to exclude others from using the phrase "shower beer" or "shower beer holder" in connection with the sale of a shower beer holder. *Id.*, ¶¶ 19, 25;

- By virtue of TG's false and bad faith assertions regarding its purported trademark rights and 30 Watt's purported violation thereof, Amazon was deceived into removing the SUDSKI from its product listings for a lengthy amount of time, resulting in lost sales, commercial injury to 30 Watt, and reduction in consumer choice. *Id.*, ¶¶ 20, 27, 28; and,

- Further evidencing TG's bad faith intent to stifle competition and cause injury to 30 Watt and its business relationships, TG (a) falsely asserted to Tooletries that sales of products under the SUDSKI and SIPSKI marks infringed TG's trademarks and demanded that Tooletries cease and desist from any further sales of these products, and (b) named Tooletries – an Australian entity -- as a defendant in this lawsuit even though TG had no colorable basis for suing Tooletries in this forum. *Id.*, ¶¶ 21, 22.

These allegations are different in substance, but similar in character, to the types of allegations and facts that courts have found to form the basis for valid claims of unfair competition under Section 43(a) of the Lanham Act.

TG raises a number of arguments as to why it believes 30 Watt's Section 43(a) claim should be dismissed, but none is meritorious. First, TG labels Count I as a claim for "trademark misuse" and then argues that no such cause of action exists. ECF No. 24, PageID.847. Even if TG is correct that there is no such thing as a "trademark misuse" claim, it is irrelevant. Count I is not a trademark misuse claim. It is a claim for unfair competition under Section 43(a) of the Lanham Act, supported by the case law cited above and allegations sufficient to state an actionable claim.

Second, TG argues that Count I fails because "a plaintiff must allege a protectable mark and likelihood of confusion, deception, or mistake on the part of consumers" to state a Section 43(a) unfair competition claim and 30 Watt's Counterclaim does not include any such allegations. ECF No. 24, PageID.849. This argument fails as well because the case law cited above demonstrates that Section 43(a) is not limited to traditional infringement claims, but encompasses a broader range of conduct, in accordance with its remedial purpose. A case TG cites drives this point home. In *Polar Molecular Corp. v. Amway Corp.*, 2007 WL 3473112 (W.D. Mich. Nov. 14, 2007) (cited in TG's Brief, ECF No. 24, at PageID.852), the court found that the plaintiff could not pursue an unfair competition claim under Section 43(a) based on trademark infringement because it had no rights in the mark at issue. The court noted, however, that the plaintiff had alleged an alternate basis for Section 43(a) liability and that "Section 1125(a) of the Lanham Act is not limited to trademark issues." *Id*., *4 (citing *Gnesys v. Greene*, 437 F.3d 482, 488-89 (6th Cir. 2005) ["By the statute's clear language, it is not limited to trademark issues."]). The court allowed the plaintiff to proceed on the theory that the defendants engaged in unfair competition by making false assertions that had they purchased rights in the plaintiff's technology with its permission. *Polar*, 2007 WL 3473112, *4. As this case, and others, demonstrates, that 30 Watt has not alleged infringement of its own trademark rights is irrelevant where Section 43(a) plainly encompasses conduct

11

beyond traditional trademark infringement and 30 Watt has alleged facts sufficient to state an alternate theory of unfair competition that is in accord with established case law.

Finally, citing *Polar*, TG argues that Count I should be dismissed because TG has priority rights in SHOWER BEER and a Section 43(a) unfair competition claim cannot be brought against a party that has priority rights. ECF No. 24, PageID.852. This argument fails for much the same reason TG's argument discussed in the previous paragraph fails. If Count I was based on allegations that TG was infringing 30 Watt's trademark rights by using a SHOWER BEER mark, then TG's argument might have merit. But again, Count I is not based on infringement and has nothing to do with competing trademark rights. It is based, instead, on TG's false and bad faith assertions regarding its own purported trademark rights and 30 Watt's purported infringement of those rights. Priority, therefore, is a non-issue.

30 Watt has stated a factually and legally viable claim for unfair competition under Section 43(a) of the Lanham Act and TG has failed to proffer any valid legal basis for its dismissal. Accordingly, TG's motion should be denied as to Count I of the Counterclaim.

## C. Count II States a Factually and Legally Viable Claim for Common Law Unfair Competition

Count II of the Counterclaim is a claim for common law unfair competition based upon the same conduct that forms the basis of 30 Watt's Lanham Act claim.

Because "Michigan's common law regarding unfair competition tracks its federal counterpart," *Shafi v. Weidinger*, 2011 WL 6338864, at *12 (E.D. Mich. Dec. 19, 2011), a finding that Count I states a valid Section 43(a) unfair competition claim should yield the conclusion that Count II likewise states a valid claim.

As with Count I, TG attempts to narrow the scope of a common law unfair competition claim to fit its preferred narrative. Citing *Dassault Systemes, S.A. v. Childress*, 2014 WL 6865498, at *8 (E.D. Mich. Dec. 3, 2014), TG contends that this type of claim "enforces only two theories of liability," palming off and false designation of original. ECF No. 24, PageID.853. TG is incorrect.

Like unfair competition under the Lanham Act, common law unfair competition is a broad cause of action that "prohibits unfair and unethical trade practices that are harmful to a competitor or to the general public." *Fed.-Mogul World Wide, Inc. v. Mahle GmbH*, 2011 WL 4485080, at *14 (E.D. Mich. Sept. 27, 2011). The Sixth Circuit explained the broad parameters of this cause of action in *Clairol, Inc. v. Boston Dis. Ctr. of Berkley, Inc.*, 608 F.2d 1114, 1118 (6th Cir.1979):

> Originally, the law of unfair competition dealt generally with the palming off of one's goods as those of a rival trader….
>
> … Today, the incalculable variety of illegal practices denominated as unfair competition is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use. It is a broad and flexible doctrine. Thus it is now said that the essence of unfair competition law is fair play.

Accordingly, "[e]ach unfair competition case 'is determined upon its own facts and relief is based upon the principles of common business integrity.'" *Fed.-Mogul*, 2011 WL 4485080, at *14 (quoting *Good Housekeeping Shop v. Smitter*, 254 Mich. 592, 596 (1931) (citation omitted)); *see also, e.g.*, *Dura Global Tech., Inc. v. Magna Donnelly Corp.*, 2009 WL 3032594, at *4-5 (E.D. Mich. Sept. 18, 2009) (allegations that defendant hired employees away from plaintiff and used their knowledge to gain unfair advantage in obtaining contract stated claim for common law unfair competition); *see also, e.g., NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 818 (6th Cir. 2008) (stating that common law unfair competition "may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another.")

False designation and palming off may be actionable as common law unfair competition, but a common law unfair competition claim is not dependent on allegations of either. Rather, as the above-cited case law demonstrates, it is a broad cause of action under which a variety of deceptive and wrongful trade practices is actionable. 30 Watt alleges, among other things, that TG made false and bad faith assertions to Amazon regarding the scope of TG's trademark rights and 30 Watt's alleged infringement of those rights, that TG thereby deceived Amazon into de-listing the SUDSKI, as TG intended, and that 30 Watt suffered economic injury as a

result of TG's actions. *See* Counterclaim, ¶¶ 17-35. Given the broad scope of the tort of unfair competition, these allegations are sufficient to state an actionable claim.

For the reasons stated above, TG's motion should be denied as to Count II of 30 Watt's Counterclaim.

### D.     Count III States a Factually and Legally Viable Claim for Tortious Interference With Business Expectancy

Count III of the Counterclaim is a claim for tortious interference with a business expectancy. This claim is also based on the false and deceptive statements TG made to Amazon regarding TG's trademark rights and 30 Watt's purported infringement of those rights, resulting in the de-listing of the SUDSKI and lost sales to prospective SUDSKI purchasers. Counterclaim, ¶¶ 36-43.

In Michigan, the elements of a claim for tortious interference with a business expectancy are:

> (1) the existence of a valid business … expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the … expectancy on the part of the defendant …, (3) an intentional interference by the defendant inducing or causing a breach or termination of the … expectancy, and (4) resulting damage to the party whose … expectancy was disrupted.

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90 (2005). 30 Watt has alleged facts sufficient to satisfy each of these elements.

First, 30 Watt alleges that it sold SUDSKIs through Amazon and intended for Amazon to be one of its primary sales outlets. Counterclaim, ¶ 12. 30 Watt further alleges that it "sold numerous SUDSKI products to consumers through Amazon

prior to the product being de-listed based on TG's false assertions, and thus had a realistic, reasonable, and substantial expectation that it would continue to sell SUDSKIs to prospective customers who were shopping on Amazon for a shower beer holder." *Id.*, ¶ 41, PageID.814. These allegations establish the first element of 30 Watt's tortious interference claim.

30 Watt further alleges that TG submitted false complaints to Amazon for the improper, anti-competitive purpose of having the SUDSKI removed from Amazon so that consumers interested in a shower been holder would not have the choice of buying a SUDSKI. *Id.*, ¶¶ 17-22, 39. TG was, therefore, obviously aware that 30 Watt was selling SUDSKIs to consumers through Amazon and that 30 Watt intended to continue doing so. *Id.*, *see also id.*, ¶ 37 ("TG had knowledge that 30 Watt was offering its SUDSKI product for sale to consumers through Amazon.") These allegations establish the second element of 30 Watt's tortious interference claim.

30 Watt further alleges that TG intentionally interfered with 30 Watt's expectation of future SUDSKI sales to Amazon shoppers by making false and bad faith assertions to Amazon regarding the scope of TG's trademark rights and 30 Watt's alleged violation thereof; that TG did so for the improper purpose of inducing Amazon to de-list the SUDSKI; and that TG "had no colorable, reasonable, or good-faith basis for making such assertions." *Id.*, ¶¶ 17-22, 38, 39. TG thereby deceived Amazon into de-listing the SUDSKI, resulting in elimination of the SUDSKI as an

option for consumers interested in a shower beer holder and disruption of 30 Watt's expectation of future sales to such consumers. *Id.*, ¶¶ 40-42. These allegations establish the third element of 30 Watt's tortious interference claim.

Finally, 30 Watt alleges that as a result of TG's tortious actions, 30 Watt "has sustained substantial harm, including lost sales to prospective purchasers of SUDSKIs, damage to its reputation, and damage to its SUDSKI brand and to the goodwill 30 Watt has built up in the SUDSKI mark." *Id.*, ¶ 43. These allegations establish the fourth and final element of 30 Watt's tortious interference claim.

As shown above, the Counterclaim contains allegations sufficient to establish each of the elements of a claim for tortious interference with a business expectancy under Michigan law. TG does not argue otherwise. It instead asserts two arguments that are in the nature of affirmative defenses. Neither provides a basis for dismissal.

TG's first argument is that its statements to Amazon are not actionable as tortious interference because they were "[p]rivileged and [t]rue." ECF No. 24, PageID.855. According to TG, its actions,

> only consisted of informing third-parties of its acknowledged trademark rights. 30 Watt alleges that Sipcaddy tortiously interfered with it by informing Amazon that 30 Watt was using Sidcaddy's federally registered trademark for "SHOWER BEER."…. 30 Watt does not dispute it was using Sipcaddy's federally registered trademark…. Therefore, not only does 30 Watt fail to allege any improper purpose, the statement made to Amazon that 30 Watt was using Sipcaddy's federally registered "SHOWER BEER" trademark was true.

> Count III should be dismissed because Sipcaddy did nothing improper and only told Amazon what 30 Watt admits is the truth.

*Id.*, PageID.855-.856.

To begin with, the above-quoted passage contains several misstatements. First, it is not clear what TG means by its "acknowledged trademark rights." *Id.* But, to be clear, 30 Watt has never acknowledged, and has in fact disputed, that TG has any protectable rights in "SHOWER BEER." *See, e.g.*, ECF No. 20, Affirmative Defenses 2-4; Counterclaim, ¶ 19. There has been no "acknowledgment" of TG's trademark rights by 30 Watt.

Second, the statement that "30 Watt does not dispute it was using Sipcaddy's federally registered trademark" is demonstrably false. ECF No. 24, PageID.856. To the contrary, in addition to asserting that TG has no protectable rights in "shower beer," 30 Watt has alleged that it was merely using the term "shower beer" to describe the function of its product and not in any way as a source identifier. *See, e.g.*, ECF No. 20, Aff. Def. 9, 10; *see also* Counterclaim, ¶ 13. There has never been any admission by 30 Watt that it was using "shower beer" as a trademark.

Third, the contention that "… 30 Watt fail[s] to allege any improper purpose" is also demonstrably false. ECF No. 24, PageID.856. 30 Watt's Counterclaim contains numerous allegations that TG acted with an improper purpose when it made false statements to Amazon about the scope of its trademark rights and 30 Watt's alleged violation thereof. 30 Watt alleges in multiple places that TG made those

statements for the wrongful purpose of inducing Amazon to de-list the SUDSKI, to suppress legitimate competition, and to cause economic injury to 30 Watt. Counterclaim, ¶¶ 17-23, 25, 31, 39.

TG's argument that 30 Watt cannot maintain a tortious interference claim because TG's actions were "privileged and true" is, therefore, based on a series of false statements. When those misstatements are stripped away from TG's argument, there is nothing left. TG's "privileged and true" argument based on purported concessions and admissions by 30 Watt is baseless.

Moreover, by this argument, TG asks the Court to accept as true its contention that the statements it made to Amazon were a true, good-faith attempt to protect its purported trademark rights. Under well-establish case law, however, a court reviewing a 12(b)(6) motion is required to accept the plaintiff's allegations as true. *Adam Comm. Ctr.*, 381 F. Supp. 3d at 894. 30 Watt alleges that TG's statements to Amazon were false and made in bad faith to eliminate the SUSDKI as a competitive product. Counterclaim, ¶¶ 17-23, 37-43. Applying the proper standard of review, 30 Watt's allegations must be accepted as true, and TG's contrary allegations disregarded. TG's "privileged and true" argument should be rejected for this additional reason.

TG's second argument regarding 30 Watt's tortious interference claim is that its complaints to Amazon are insulated from lability under the *Noerr-Pennington*

doctrine. *Noerr-Pennington* immunity typically applies to activities relating to government petitioning, such as lobbying or filing a lawsuit. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609 (1972). TG cites no Sixth Circuit case law holding that it applies to the kind of conduct alleged here.

*Noerr-Pennington*, moreover, is subject to a "sham exception," whereby immunity does not apply to petitioning conduct that is a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S. Ct. 523 (1961); *see also, e.g.*, *Scooter Store, Inc. v. SpinLife.com*, 777 F. Supp. 2d 1102, 1114 (S.D. Ohio 2011). 30 Watt has alleged that TG, knowingly and without any reasonable basis, submitted false complaints of trademark infringement to Amazon for the purpose of interfering with 30 Watt's sales of SUDSKIs to prospective purchasers. Counterclaim, ¶¶ 17-23, 37-43. In other words, 30 Watt alleges that TG's complaints were a sham designed to interfere with 30 Watt's business relationships. These allegations, taken as true, are sufficient to invoke the sham exception. *Adam Comm. Ctr.*, 381 F. Supp. 3d at 894; *see also Scooter Store*, 777 F. Supp. 2d at 1115 ("[W]hether a party's conduct is a genuine attempt to avail itself of the judicial process or is merely a sham is a question of fact that is inappropriate for a motion to dismiss."). Accordingly, to the extent

*Noerr-Pennington* even applies to the type of activity at issue here, it does not provide a basis for dismissal of 30 Watt's tortious interference claim.

Finally, both of TG's arguments regarding 30 Watt's tortious interference claim are in the nature of affirmative defenses. "As uniformly recognized in the case law, it generally is not appropriate to grant a Rule 12(b)(6) motion to dismiss on the basis of an affirmative defense…." *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 833 (E.D. Mich. 2018). TG's "privileged and true" and *Noerr-Pennington* arguments should be rejected for this additional reason.

For the reasons stated above, 30 Watt has alleged a legally and factually viable tortious interference claim and TG has failed to articulate any valid grounds for its dismissal. TG's motion should, therefore, be denied as to Count III.

### E. Count IV States a Factually and Legally Viable Claim for Violation of the Michigan Consumer Protection Act

Count IV of the Counterclaim is a claim for violation of the Michigan Consumer Protection Act ("MCPA"). 30 Watt asserts violations of several provisions of the Act based on the false, deceptive, and bad faith assertions TG made to Amazon regarding its purported rights in the phrase "shower beer" and 30 Watt's alleged infringement of those rights. *See* Counterclaim, ¶¶ 17-23, 44-47.

30 Watt's Counterclaim contains allegations sufficient to state actionable violations of at least the following provisions of the MCPA, without limitation:

- MCL 445.903(1)(b): "Using deceptive representations … in connection with goods or services."

- MCL 445.903(1)(f): "Disparaging the goods, services, business, or reputation of another by false or misleading representation of fact."

- MCL 445.903(1)(n): "Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

As alleged in the Counterclaim, TG made deceptive representations to Amazon regarding the scope of its rights in "shower beer" and 30 Watt's alleged infringement of those rights through its use of the descriptive phrase "shower beer holder" on the SUDSKI packaging. Counterclaim, ¶¶ 18, 19, 31, 38, 46; MCL 445.903(1)(b). By virtue of its false and misleading representations, TG disparaged 30 Watt and its SUDSKI product, causing "damage to its reputation, and damage to its SUDSKI brand and the goodwill 30 Watt has built up in the SUDSKI mark." Counterclaim, ¶ 28; MCL 445.903(1)(f). Further, TG's false representations resulted in confusion or a misunderstanding regarding the parties' respective legal rights, as they induced Amazon to mistakenly remove the SUDSKI from its product listings. Counterclaim, ¶¶ 20, 23, 26, 27, 32, 33; MCL 445.903(1)(n). Based on these allegations, 30 Watt has stated an actionable claim under several provisions of the MCPA.

TG vaguely asserts that 30 Watt's claim is lacking because the element of a consumer purchase or conduct involving consumers is absent. This argument fails for at least two reasons. First, the case law plainly establishes that where consumer

interests are at stake, one competitor may sue another under the MCPA. As the court stated in *John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 970 (E.D. Mich. 1994):

> Implicit in the cases finding a right of action in non-consumers under the MCPA is the understanding that the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events.

*See also Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 847-50 (E.D. Mich. 2003) (allegations by business of competitor's wrongful use of domain name stated valid MCPA claim). Accordingly, any argument that a competitor-versus-competitor lawsuit is not cognizable under the MPCA is incorrect as a matter of law.

Second, 30 Watt alleges that TG's false infringement claims adversely impacted consumers and that 30 Watt's interests are at stake because those false claims caused economic injury to 30 Watt. Specifically, 30 Watt alleges that, because of TG's false claims, "Amazon removed the SUDSKI from its product listings. Consequently, the SUDSKI has not been available for purchase on Amazon for almost one year, resulting in lost sales to prospective SUDSKI purchasers … and reduction in consumer choice." Counterclaim, ¶ 20. 30 Watt further alleges that TG's false complaints leading to Amazon's de-listing of the SUDSKI resulted in "eliminating the SUDSKI as an option for Amazon shoppers looking to purchase a shower beer holder…." *Id.*, ¶¶ 27, 33; *see also id.*, ¶ 39. 30 Watt also alleges that it

sustained substantial economic injury as a result of TG's false complaints. *Id.*, ¶¶ 17-23, 28, 34, 43, 47. Consequently, 30 Watt has sufficiently alleged that TG's actions had an adverse impact on consumers and that 30 Watt has a "significant stake in the events" giving rise to its MCPA claim. *John Labatt*, 853 F. Supp. at 970.

TG also argues that 30 Watt's MCPA claim is deficient because 30 Watt does not allege a likelihood of confusion among consumers. A party whose trademark rights have been violated can assert a claim under the MCPA, and likelihood of confusion would be an element of such a claim. But TG cites no authority holding that an MCPA claim must be based on infringement-type allegations or that likelihood of confusion is a required element of every claim brought under the MCPA. The plain language of the statute itself negates such a narrow construction, and the case law demonstrates that it applies to a broader range of conduct. *See, e.g., Game On Ventures, Inc. v. Gen. RV Ctr., Inc.*, 587 F. Supp. 2d 831, 839 (E.D. Mich. 2008) (MCPA applicable to alleged misrepresentations made by seller of recreational vehicle); *Florists' Transworld Delivery,* 261 F. Supp. 2d at 847-50 (wrongful use of domain name). As explained before, 30 Watt's claim is not based on infringement of its trademark rights, but on deceptive conduct by TG leading to

economic harm to 30 Watt and reduction in consumer choice. These allegations are sufficient to state an actionable claim under the cited provisions of the MCPA.[2]

For the reasons stated above, TG's motion should be denied as to Count IV of 30 Watt's Counterclaim.

## <u>CONCLUSION</u>

30 Watt has alleged facts sufficient to state a claim on which relief can be granted as each of the four counts contained in the Counterclaim. For this reason, TG's motion to dismiss pursuant to Rule 12(b)(6) should be denied in its entirety.

Respectfully submitted,

JAFFE, RAITT, HEUER & WEISS, P.C.

*/s/ David S. McDaniel*

Dated: October 10, 2019

David S. McDaniel (P56994)
27777 Franklin Road, Ste. 2500
Southfield, MI 48034
(248) 351-3000
dmcdaniel@jaffelaw.com

*Counsel for 30 Watt Holdings, LLC*

---

[2] As with 30 Watt's tortious interference claim, TG argues that 30 Watt cannot proceed under the MCPA because TG was truthfully asserting to Amazon its "admitted" trademark rights. *See, e.g.*, ECF 24, PageID.858. As explained before, however, 30 Watt has never "admitted" TG's purported rights in "shower beer," and TG's assertions regarding the "truth" of its statements are not a proper matter for consideration on a 12(b)(6) motion.

## **PROOF OF SERVICE**

On October 10, 2019, the undersigned filed the foregoing document through the Court's ECF system. The parties' counsel of record will receive notice of the filing and a copy of the document through the ECF system.

Dated: October 10, 2019

*/s/ Sheila Bryant*
Sheila Bryant
Jaffe, Raitt, Heuer & Weiss, P.C.
sbryant@jaffelaw.com